**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BOBBI JO MACK,                          )
                                        )
              Petitioner,               )       Civil Action No. 2:21-cv-593
                                        )
       v.                               )
                                        )       Magistrate Judge Patricia L. Dodge
SUPERINTENDENT LONNIE OLIVER,           )
*et al.*,                               )
                                        )
              Respondents.              )

**<u>MEMORANDUM</u>**

Before the Court[1] is the Petition for a Writ of Habeas Corpus (ECF 5) filed by state prisoner

Bobbi Jo Mack under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"). For the reasons below, the Court will deny the Petition and will

deny a certificate of appealability.

**I.     Introduction**

In the Petition, Mack challenges the judgment of sentence imposed on her by the Court of

Common Pleas of Fayette County in January 2017 after she pleaded guilty to committing the crime

of attempted homicide (Count 1) and many other crimes related to the kidnapping, robbery, severe

beating and sexual assault of a 19-year-old victim. Mack also entered a plea of no contest to the

charge of conspiracy to commit rape by forcible compulsion (Count 9). Attorney Mary Spegar

represented Mack when her case was before the trial court.

Mack raises these grounds[2] for habeas relief in the Petition:

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to
have a United States Magistrate Judge conduct proceedings in this case, including entry of a final
judgment.
[2] For ease of reference and analysis, the Court has renumbered Mack's claims.

Claim 1  Attorney Spegar was ineffective, and thus Mack's pleas were not knowingly, voluntarily and intelligently entered, because Attorney Spegar:

(a) "failed to inform [Mack that] she would need to register as a sex offender[.]" (ECF 5 at p. 6.)

(b) misinformed Mack that "pleading 'no contest' [to Count 9] meant a judge would decide if she was guilty." (*Id.*)

(c) failed "to investigate/acquire discovery and [also] counseled [Mack] to take a bad plea. [Mack] asked Attorney Spegar to view the evidence against her and was told 'it's too big.'" (*Id.* at p. 9.)

(d) "failed to investigate if [the] victim's head injury affected her testimony about the incident." (*Id.* at p. 11.)

Claim 2  "Doing nothing" is not a crime and Mack merely "sat in the car" while her co-defendant and "paramour," Isiah Colbert, "committed [the] crimes" and he "was not charged with rape. Therefore, who did [Mack] conspire with? There was no evidence [she] assaulted the victim." (*Id.* at p. 8.)

As explained below, Claim 1(a) is the only ground for relief that Mack did not procedurally default because it is the only one that she raised to the Superior Court of Pennsylvania on appeal. The Court will deny Claim 1(a) on the merits because the Superior Court's adjudication of it withstands AEDPA's standard of review. As for Claims 1(b), (c) and (d) and Claim 2, Mack did not properly exhaust the available state court remedies for these claims and there are no grounds that would allow her to avoid her default. Therefore, the Court will deny those four claims as procedurally defaulted.

## II. Relevant Background

In February 2016, the Commonwealth charged Mack in a 19-count Information with: Count 1, attempted homicide (F1); Count 2, aggravated assault (F1); Count 3, kidnapping to facilitate a felony (F1); Count 4, kidnapping to inflict injury/terror; Count 5, rape by forcible compulsion (F1); Count 6, robbery (F1); Count 7, conspiracy to commit aggravated assault (F1);

Count 8, conspiracy to commit kidnapping (F1); Count 9, conspiracy to commit rape (F1); Count 10, conspiracy to commit robbery (F1); Count 11, conspiracy to commit sexual assault (F1); Count 12, conspiracy to commit unlawful restraint/serious bodily injury (M1); Count 13, conspiracy to commit theft by unlawful taking (M1); Count 14, conspiracy to commit simple assault (M2); Count 15, sexual assault (F2); Count 16, robbery (F2); Count 17, unlawful restraint (M1); Count 18, theft by unlawful taking (M1); and Count 19, simple assault (M2). (ECF 17-2 at pp. 1-5.)

The Fayette County Public Defender's Office was appointed to represent Mack. At the time, Attorney Spegar was an Assistant Public Defender and she represented Mack when her case was before the trial court, including at the September 30, 2016 plea hearing. The Honorable Joseph M. George presided over this hearing. Mack pleaded guilty to all counts except for: (1) Count 9, conspiracy to commit rape, to which she entered a plea of no contest; and (2) Count 5, rape by forcible compulsion, which the prosecution nolle prossed. (ECF 17-3 at p. 1; ECF 17-12 at p. 3.)

Following the entry of her pleas, Judge George ordered that Mack submit to an evaluation by the Sexual Offender Assessment Board ("SOAB") to determine whether she should be classified as a sexually violent predator. (ECF 17-5.) Staff from the SOAB met with Mack on December 9, 2016. According to Mack, it was during this meeting that she learned for the first time that she would have to register as a sex offender because of the nature of some charges to which she had pled. (ECF 23 at p. 6.)

The SOAB subsequently concluded that Mack was not a sexually violent predator. (ECF 17-6.) Judge George then scheduled her sentencing hearing, which was held on January 10, 2017. Another attorney from the Fayette County Public Defender's Office appeared with Mack at this hearing. At the hearing, but before the judge imposed her sentence, Mack made an oral motion to

withdraw her pleas. She claimed that she did not understand the consequences of entering the pleas that she did. (ECF 23-6.)

Judge George denied Mack's oral motion. (*See* ECF 17-8 at p. 1.) He then sentenced Mack at Count 1, attempted homicide, to a term of 20 to 40 years' imprisonment. (ECF 17-1 at pp. 1-2.) At Count 9, conspiracy to commit rape, Judge George sentenced Mack to a consecutive term of 5 to 10 years' imprisonment and required that she register for life in accordance with the Sexual Offender Registration and Notification Act ("SORNA"). (ECF 17-7 at pp. 3-7.) No other penalties were imposed on Mack's remaining convictions. (*Id.* at pp. 8-23.)

The next day, Mack, through Attorney Spegar, filed a motion "for reconsideration of sentence/motion to allow defendant to withdraw plea."[3] (ECF 17-8 at pp. 1-4.) In support of this motion, Mack asserted that the court erred when it denied her request to withdraw her pleas since she made that request before the court imposed her sentence. Mack also argued that her sentence was excessive. (*Id.* at pp. 1-2.)

Attorney Spegar presented this motion during motions court held on January 17, 2017. She told Judge George that, despite Mack's claims to the contrary, she had in fact explained to Mack the sexual offender registration requirements before Mack entered her pleas:

> MS. SPEGAR: …. I did explain to [Mack] that pursuant to the one sexual assault charge that she would be subject to Megan's law.
>
> THE COURT: And she was found not to be a sexually violent predator.

---

[3] "The law governing the withdrawal of a guilty plea in Pennsylvania holds that, although a defendant has no absolute right to withdraw a guilty plea, a request to withdraw a guilty plea, if made before sentencing, should be allowed for any fair and just reason, unless the Commonwealth has demonstrated that it would be substantially prejudiced." 16A PENNSYLVANIA CRIMINAL PRACTICE § 25:6, Westlaw (database updated Oct. 2023). But "[s]ince allowing the withdrawal of a guilty plea after sentencing would allow a defendant to use a guilty plea as a sentence testing device, a defendant must show prejudice on the order of manifest injustice before a guilty plea may be withdrawn after sentencing." *Id.*

MS. SPEGAR:        Absolutely.

THE COURT:        But there's still the registration requirements.

MS. SPEGAR:        Absolutely.

THE COURT:        And you talked to her about that before her plea?

MS. SPEGAR:        Oh my gosh. I can't tell you how many times I was
                   at that jail negotiating that plea.

THE COURT:        So that's a yes?

MS. SPEGAR:        That's a yes and since this I've been to the jail to see her to
                   get this---  Really all we're doing is perhaps asking for a
                   hearing to have the Court reconsider sentencing.

(ECF 23-2 at p. 1.)

Following this discussion, Judge George issued an order that denied Mack's request to withdraw her pleas, explaining: "Upon consideration of the statements of defense counsel in motions court and after review of the plea proceedings and sentence proceedings, the defendant has failed to provide a fair and just reason sufficient to support a grant of the request to withdraw her plea[s]." (ECF 17-10.) Judge George also issued a separate order that granted Mack's motion to reconsider her sentence to the extent that he reduced the term of imprisonment imposed on Count 1 to a term of 12 ½ to 25 years. He declined to modify the sentence imposed in any other respect. (ECF 17-9.)

Mack did not file a direct appeal with the Superior Court. Accordingly, her judgment of sentence became final under both state and federal law around February 16, 2017, when the 30-day period for her to file a direct appeal expired. Pa.R.A.P. 903; Pa.R.Crim.P. 720; 42 Pa.C.S.A. § 9545(b)(3); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012).

Attorney Spegar tragically died in an accident in November 2017. (*See* ECF 23-14 at p. 1.) The next month, in December 2017, Mack filed a pro se petition for collateral relief under the Pennsylvania's Post Conviction Relief Act ("PCRA"). (ECF 17-11 at pp. 1-2.)

Judge George appointed Attorney Amanda M. Como ("PCRA counsel") to represent Mack. A counseled amended PCRA petition was then filed asserting that Attorney Spegar provided Mack with ineffective assistance for many reasons. (ECF 17-12 at pp. 1-12.)  In relevant part, *Mack raised three of the five claims that she now brings in this federal habeas case.* Mack asserted, as she does here, that Attorney Spegar was ineffective and thereby caused Mack to enter involuntary, unintelligent and involuntary pleas, because Attorney Spegar allegedly: failed to inform Mack she would need to register as a sex offender (Claim 1(a)); misinformed Mack that pleading "no contest" to Count 9 meant that the judge would decide whether she was guilty (Claim 1(b)); and, failed to provide to Mack her discovery packet and discuss the case with her (Claim 1(c)). (*Id.* at pp. 6-8.)

Judge George presided over an evidentiary hearing on Mack's PCRA claims on December 6, 2018. Mack, who was the only individual to testify, stated that Attorney Spegar told her that entering a plea of no contest to Count 9 "meant that she was pleading *not guilty*." (ECF 28, PCRA Hr'g Tr. at p. 11, emphasis added.) Mack also said that Attorney Spegar never told her that, as a consequence of entering her pleas, she would have to register as a sex offender. (*Id.* at p. 12.) According to Mack, if Attorney Spegar had accurately advised her she would not have entered the pleas that she did and instead would have gone to trial. (*Id.* at pp. 15-17.)

Mack also asserted during her PCRA hearing testimony that Attorney Spegar told her that her discovery packet was "too big for [Mack] to have." (*Id.* at p. 8.) Mack said Attorney Spegar neither shared nor discussed the contends of the discovery packet with her. (*Id.* at pp. 8-9.)

During cross-examination, Mack admitted that at the plea hearing she confirmed that she understood that: (1) by entering her pleas she was giving up her right to go to trial and the possibility of being found not guilty; (2) the court could sentence her to the maximum amount allowed by law for the charges; and (3) she was not contesting the evidence the prosecution would present on Count 9 if her case went to trial. (*Id.* at pp. 18-20.)

Mack also admitted that she stated during the plea hearing that she and Attorney Spegar had discussed entering her pleas "for a while," that she had no questions for Judge George, and that she was satisfied with Attorney Spegar's representation. (*Id.*) Moreover, towards the end of the PCRA hearing the following exchange occurred between Judge George and Mack:

> THE COURT:   So, Ms. Mack, what specific question did I ask you in the plea proceeding that you didn't understand?
>
> [MACK]:   I didn't understand that no contest, that it meant when I pled no contest that it absolutely meant that I was, that it meant that I was guilty.
>
> THE COURT:   Didn't I explain to you what that meant?
>
> [MACK]:   You did. Yes.

(*Id.* at p. 24.)

On or around March 4, 2019, Judge George issued an order denying Mack's amended PCRA petition. (ECF 17-1 at p. 20.) Mack, through counsel, filed an appeal with the Superior Court. In this appeal Mack raised *only one of the claims she raises in this federal habeas case*. She raised Claim 1(a), asserting that Judge George erred in denying her claim that Attorney Spegar failed to advise her that she would have to register as a sex offender. (ECF 17-14 at p. 2.)

Thereafter, Judge George issued his Appellate Rule 1925(a) opinion. (ECF 28 at pp. 31-34.) Judge George explained that he did not credit Mack's PCRA hearing testimony asserting that Attorney Spegar failed to inform her of the sex offender registration requirements. Judge George

pointed out that during motions court on January 17, 2017, Attorney Spegar had confirmed that "she explained [to Mack] the ramifications of the plea as they would pertain to registration requirements." (*Id.* at p. 33.) Judge George concluded: "The Court, being familiar with Ms. Spegar for many years, has no doubts with regard to her credibility. We find the testimony of [Mack] not credible in this regard." (*Id.*)

The Superior Court affirmed Judge George's decision denying Mack PCRA relief in *Commonwealth v. Mack*, No. 486 WDA 2019 (Pa. Super. Ct. Jan. 7, 2020). (ECF 17-14 at pp. 1-7.) In denying Claim 1(a), the Superior Court held:

> [Mack] first contends that her plea counsel, Attorney Spegar, was ineffective by not explaining to [Mack] that she would face registration requirements as a sexual offender by pleading guilty. According to [Mack], counsel's failure to ensure that she understood this consequence of entering her plea rendered it involuntary, unknowing, and unintelligent. [Mack] insists that she would not have pled guilty had she known about the applicable registration requirements.
>
> [Judge George] denied this ineffectiveness claim because [he] did not believe [Mack's] testimony that Attorney Spegar failed to explain the registration requirements to her….
>
> The record supports [Judge George's] credibility determination. At the motions hearing on January 17, 2017, the court asked Attorney Spegar several times whether she had explained the registration requirements to [Mack] prior to her pleading guilty. *See* N.T. Hearing, 1/17/17, at 2-3. Attorney Spegar repeatedly confirmed that she had "[a]bsolutely" explained those requirements to [Mack] during their multiple meetings before the plea proceeding. *See id.* Accordingly, we are bound by [Judge George's] credibility determination that Attorney Spegar informed [Mack] of the sexual offender registration requirements she faced by pleading guilty. *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 99 (Pa. 1998) ("Just as with any other credibility determination, where the record supports the PCRA court's credibility determinations are binding on [an appellate c]ourt.") Therefore, [Mack's] first ineffectiveness claim is meritless.

(*Id.* at pp. 4-5.)[4]

---

[4] The only other claim Mack raised on appeal to the Superior Court was that Attorney Spegar was ineffective for failing to follow her directive to file a direct appeal. *Mack*, No. 486 WDA 2019, at *2 (ECF 17-14 at p. 2). Mack did not raise this claim in the Petition. (*See* ECF 5 at pp. 6-4.) But it is worth noting that Judge George did not credit Mack's testimony on this claim either. Thus, the *Footnote continue on next page…*

After the Pennsylvania Supreme Court denied Mack's petition for allowance of appeal, she filed the instant Petition (ECF 5) with this Court within which she raised the five claims outlined above (Claims 1(a), (b), (c) and (d) and Claim 2). Respondents filed the Answer (ECF 17) and Mack then filed the Reply (ECF 23).[5]

## III.     Discussion

### A.       Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

It is Mack's burden to prove that she is entitled to the writ. *See, e.g.*, *Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017). There are other prerequisites that she must satisfy before she can receive habeas relief on a claim. For example, as explained below, Mack must have first raised the claim to the Superior Court or met the difficult burden of showing that

---

Superior Court denied this claim on the merits too, explaining "as with [Mack's] first issue, we are bound to accept [Judge George's] credibility determination that she did not request that Attorney Spegar file a direct appeal. Thus, [Mack's] second ineffectiveness claim also does not entitle her to relief." (*Id.* at p. 6.)

[5]  To the extent that Mack tried to assert new claims in her Reply, she may not do so. A habeas petitioner cannot raise new habeas claims in a Reply or in other subsequent filings. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts (the petitioner must specify in the petition all claims and the facts supporting each claim); Local Rule 2254.B.2.b (same). *See also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse [also known as a reply] is not the proper pleading to raise additional grounds for relief"). In addition, Rule 15 of the Federal Rules of Civil Procedure applies to habeas cases and Mack did not receive the required consent from Respondents or leave of court to file an amendment to the Petition. Fed.R.Civ.P. 15(a)(2).

the Court must excuse her failure to do so. AEDPA also bars Mack from obtaining habeas relief

on any claim adjudicated by the Superior Court unless she first overcomes the deferential standard

of review this Court must apply to the state court's adjudication of a claim. Ultimately, however,

Mack cannot receive federal habeas relief unless she shows that she is in custody in violation of

her federal constitutional rights. 28 U.S.C. § 2254(a); *see, e.g.*, *Vickers*, 858 F.3d at 849.

### B.   AEDPA's Prohibition on Evidentiary Hearings

In 1996, Congress made important amendments to the federal habeas statutes with the

enactment of AEDPA. Among other things, AEDPA "modified a federal habeas court's role in

reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S.

685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that

habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a

substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-

03 (2011) (internal quotations and citation omitted).

AEDPA put into place "even more 'stringent requirements'" regarding evidentiary

development than those that were in place before its enactment. *Shinn v. Ramirez*, 142 S. Ct. 1718,

1734 (2022) (quoting *Michael Williams v. Taylor*, 529 U.S. 420, 433 (2000)). AEDPA, as codified

at 28 U.S.C. § 2254(e)(2), provides:

> *If the applicant has failed to develop the factual basis of a claim in State court*
> *proceedings, the court shall not hold an evidentiary hearing on the claim* unless the
> applicant shows that–
>
> (A)   the claim relies on–
>
> > (i)   a new rule of constitutional law, made retroactive to cases on collateral
> > review by the Supreme Court, that was previously unavailable; or
> >
> > (ii)   a factual predicate that could not have been previously discovered
> > through the exercise of due diligence; and

> (B)   the facts underlying the claim would be sufficient to establish by clear and
> convincing evidence that but for constitutional error, no reasonable factfinder
> would have found the applicant guilty of the underlying offense.

(Emphasis added).

Importantly, a petitioner cannot avoid § 2254(e)(2)'s requirements by faulting her former counsel for failing to develop the evidence she now wants to present to support any of her federal habeas claims. *Shinn*, 142 S. Ct. at 1734-35 ("state postconviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner."); *Williams v. Sup't Mahanoy SCI*, 45 F.4th 713, 720 (3d Cir. 2022). Thus, when a petitioner "failed to develop the factual basis of a claim in State court proceedings[,]" before the federal habeas court can hold a hearing on the merits of a claim, the petitioner first must show that the claim at issue falls within either subsection (A)(i) or (A)(ii) of § 2254(e)(2) AND that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense[,]" 28 U.S.C. § 2254(e)(2)(B).

In those case in which § 2254(e)(2) does not apply because the petitioner is not at fault for "fail[ing] to develop the factual basis of a claim in State court proceedings," it is within the district court's discretion whether to hold an evidentiary hearing on a claim under Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts. *See, e.g.*, *Shinn*, 142 S. Ct. at 1734; *Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007).

### C.   AEDPA's Standard of Review

A finding of fact made by a state court has always been afforded considerable deference in a federal habeas proceeding. AEDPA continued that deference and mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).

The petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

AEDPA also put into place a new standard of review, which is codified at 28 U.S.C. § 2254(d). It applies "to any claim that was adjudicated on the merits" by the state court (here, the Superior Court)[6] and it prohibits a federal habeas court from granting relief unless the petitioner first establishes that the state court's "adjudication of the claim":

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

If, when evaluating a claim, the Court determines that Mack has satisfied AEDPA's standard of review, the Court must then "proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred."[7] *Vickers*, 858 F.3d at 849 (citing *Lafler v. Cooper*, 566 U.S. 156, 174 (2012)). That is because "a federal court can only grant the Great Writ if it is 'firmly convinced that a federal constitutional right has been violated[.]'" *Id.* (citing *Williams*, 529 U.S. at 389, and *Horn v. Banks*, 536 U.S. 266, 272 (2001) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review…none

---

[6] When applying § 2254(d), the federal habeas court considers the "last reasoned decision" of the state courts. *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (quoting *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)); *Brown v. Sup't Greene SCI*, 834 F.3d 506, 512 (3d Cir. 2016). In this case that is the Superior Court's decision in Mack's PCRA appeal.

[7] These steps "sometimes merge in cases in which the federal habeas court determines that the state court engaged in an 'unreasonable application' of clearly established Supreme Court precedent because it will be apparent from the explication of why the state court unreasonably applied that precedent that, under any reasonable application, a constitutional violation did occur." *Vickers*, 858 F.3d at 849 n.8.

of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard[.]")).

If the Superior Court did not adjudicate one of Mack's federal habeas claims on the merits, the Court must determine whether that was because she did not raise it to the Superior Court and therefore procedurally defaulted it.[8] If a claim is procedurally defaulted, the Court should deny it for that reason unless Mack has established grounds to excuse her default. If Mack has established grounds to excuse her default, the Court reviews the defaulted claim de novo (since there is no Superior Court adjudication of the claim to which the Court can apply AEDPA's standard of review at § 2254(d)). *See, e.g.*, *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

However, in all cases and regardless of whether the standard of review at § 2254(d) applies, the state court's factual determinations are presumed to be correct under § 2254(e)(1) unless the Mack rebuts that presumption by clear and convincing evidence. *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010); *Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007) ("the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d).") (citing *Appel*, 250 F.3d at 210).

---

[8] The related doctrines of exhaustion and procedural default are discussed below.

D.      **Mack's Claims**[9]

      1.    <u>Claim 1(a) Fails on the Merits Because the Superior Court's</u>
              <u>Adjudication of It Withstands AEDPA's Standard of Review</u>

In Claim 1(a), Mack asserts that Attorney Spegar provided her with ineffective assistance because Attorney Spegar allegedly failed to inform her that by entering the pleas that she did, Mack would have to register as a sex offender. As a result of Attorney Spegar's alleged ineffective assistance, Mack contends, her pleas were invalid.

In *Hill v. Lockhart*, 474 U.S. 52 (1984), the Supreme Court explained that the longstanding test for determining the validity of a plea "is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." 474 U.S. at 56 (internal quotations and citations omitted). Where, as is the case here, the petitioner entered her plea upon the advice of counsel, the voluntariness of her plea depends on whether the advice counsel gave "was within the range of competence demanded of attorneys in criminal cases[,]" *Hill*, 474 U.S. at 56 (internal quotations and citation omitted), and the petitioner must satisfy the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), in order to prevail on her challenge to her pleas. *Hill*, 474 at 52, 56-59.

---

[9] In addition to asserting that Claim 1(a) has no merit and that Claims 1(b), (c) (d) and Claim 2 are procedurally defaulted, Respondents also assert that all of Mack's claims are untimely because she filed them after the expiration of AEDPA's one-year statute of limitations, which is codified at 28 U.S.C. § 2244(d)(1). (ECF 17 at pp. 4-6.) Mack counters that she is entitled to equitable tolling because PCRA counsel gave her inaccurate advice regarding when AEDPA's statute of limitations would expire and also because the COVID lockdowns at her state correctional institution impeded her ability to file a timely federal habeas petition. (ECF 23 at pp. 2-3.) Under the circumstances, the Court need not address the statute of limitations issue "[b]ecause AEDPA's limitation period is not jurisdictional," *Jenkins v. Sup't of Laurel Highlands*, 705 F.3d 80, 89 (3d Cir. 2013) (citing *Holland v. Florida*, 560 U.S. 631 (2010)), and each of Mack's claims can be denied for the reasons discussed below.

*Strickland* recognized that a defendant's Sixth Amendment right to the assistance of counsel for her defense entails the right to be represented by an attorney who meets at least a minimal standard of competence. 466 U.S. at 685-87. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013). Under *Strickland*, it is Mack's burden to establish that Attorney Spegar's "representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" *Titlow*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690); *Richter*, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 689).

*Strickland* also requires that Mack show that she was prejudiced by Attorney Spegar's alleged deficient performance. This places the burden on her to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. When a petitioner claims, as Mack does here, that her counsel's deficient performance deprived her of a trial by causing her to accept a plea, she can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

As discussed above, the Superior Court denied Claim 1(a) because Judge George, after conducting an evidentiary hearing on the issue, rejected Mack's factual assertion that Attorney

Spegar did not advise her of the applicable sex offender registration requirements before Mack entered her pleas. Thus, the Superior Court denied Claim 1(a) because Mack failed to establish the factual premise on which the claim is based.

       a.     *Mack Has Not Satisfied Her Burdens Under § 2254(e)(1) and (d)(2)*

Because the Superior Court denied Claim 1(a) based on the credibility determinations and findings of fact made by Judge George, the two provisions of AEDPA that pertain to such findings by the state courts–§ 2254(e)(1) and § 2254(d)(2)–will be discussed first.

As explained above, under § 2254(e)(1) this Court is bound by the credibility determinations and findings of fact made by Judge George unless Mack produced "clear and convincing evidence" that Judge George was wrong. *See also Vickers*, 858 F.3d at 850 n.9 (even in pre-AEDPA cases, "'federal habeas courts [had] no license to redetermine credibility of witnesses who demeanor ha[d] been observed by the state trial court, but not by them'") (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (bracketed text added by the Court of Appeals)).

Additionally, the standard of review at § 2254(d)(2) requires that Mack show that the Superior Court's adjudication of Claim 1(a) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016) (en banc) (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting

*Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. *Wood*, 558 U.S at 301 (quoting *Collins*, 546 U.S. at 341-42).

Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004). The Court of Appeals has instructed that when it applies (as it does here because the Superior Court adjudicated Claim 1(a) on the merits), § 2254(d)(2) provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while § 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.* at 235.

Mack has not met her burdens under §§ 2254(e)(1) and (d)(2). She does not direct this Court to the "clear and convincing evidence" required under § 2254(e)(1) to rebut the presumption of correctness that this Court must afford to Judge George's findings of fact and credibility determinations. Mack likewise has not shown that the Superior Court's adjudication of Claim 1(a) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Superior Court had before it the requisite evidence necessary for its adjudication to withstand review under § 2254(d)(2)'s deferential standard.

Although there can be the rare case in which "[a] federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable [under § 2254(d)(2)] or that the factual premise was incorrect by clear and convincing evidence [under § 2254(e)(1)]" *Miller-El*, 537 U.S. at 340, this case is not one of them. There is no basis on the record before this Court to determine that Mack has overcome AEDPA's deference to the state courts' factual determinations.

b.    *Mack Has Not Satisfied Her Burdens Under § 2254(d)(1)*

The Court next must evaluate the Superior Court's adjudication of Claim 1(a) under § 2254(d)(1), which applies to questions of law and mixed questions of law and fact. In applying the standard of review at § 2254(d)(1), this Court's first task is to ascertain what law falls within the scope of the applicable "clearly established Federal law[.]" *Id.* It is "'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"[10] *Dennis*, 834 F.3d at 280 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). It "includes only 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *White v. Woodall*, 572 U.S. 415, 420 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012), which quoted *Williams*, 529 U.S. at 412).

In this case, the "clearly established Federal law" is that which is set forth in *Strickland* (and its progeny, such as *Hill*). The Superior Court applied the analysis required by *Strickland*

---

[10]  The Supreme Court "has repeatedly emphasized" that "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Glebe v. Frost*, 574 U.S. 21, 24 (2014) (per curiam) (quoting § 2254(d)(1) and citing *Lopez v. Smith*, 574 U.S. 1 (2014) (per curiam)). *See, e.g. Renico v. Lett*, 559 U.S. 766, 779 (2010) (state court's failure to apply decision by federal circuit court "cannot independently authorize habeas relief under AEDPA."). Additionally, "[c]ircuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced.'" *Lopez*, 574 U.S. at 2 (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam)).

when it evaluated Claim 1(a). (ECF 17-14 at pp. 3-5.) Thus, the Superior Court's adjudication was not "contrary to" it. *Williams*, 529 U.S. at 404-05 (§ 2254(d)(1)'s "contrary to" and "unreasonable application of" clauses have independent meaning); *id.* at 406 (a "run-of-the-mill" state-court decision applying the correct legal rule from Supreme Court decisions to the facts of a particular case does not fit within § 2254(d)(1)'s "contrary to" clause and should be reviewed under the "unreasonable application" clause).

Thus, the only issue remaining in the Court's evaluation of Claim 1(a) is whether Mack has shown that the Superior Court's adjudication of it was an "unreasonable application" of *Strickland*. To satisfy her burden under this clause of § 2254(d)(1), Mack must do more than convince this Court that the Superior Court's decision denying Claim 1(a) was incorrect. *Dennis*, 834 F.3d at 281. She must show that it "'was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409 (emphasis added by Court of Appeals)). This requires that she establish that the Superior Court's decision "*was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*." *Richter*, 562 U.S. at 103 (emphasis added).

Mack has not met this difficult burden either. As the Supreme Court has explained:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Richter*, 562 U.S. at 102.

Based on the above, Mack has not established that the Superior Court's adjudication of Claim 1(a) was either "contrary to" or an "unreasonable application of" *Strickland*. 28 U.S.C.

§ 2254(d)(1). And as the Court explained in the previous section, Mack also has not established that the Superior Court's adjudication of Claim 1(a) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" § 2254(d)(2), and that Judge George's findings of fact and credibility determinations were incorrect by clear and convincing evidence as required by § 2254(e)(1). Thus, this Court must deny Claim 1(a) because the Superior Court's adjudication of it withstands AEDPA's standard of review.

        2.    <u>Claim 1(b), Claim 1(c), Claim 1(d) and Claim 2 Are Procedurally Defaulted</u>

Respondents contend that the Court should deny Mack's remaining claims (Claims 1(b), (c) and (d) and Claim 2) because she did not exhaust her available state court remedies for them. As a result, Respondents contend, Mack has procedurally defaulted these claims.

The "exhaustion doctrine" requires that a state prisoner raise her federal habeas claims in state court through the proper procedures before she litigates them in a federal habeas petition. 28 U.S.C. § 2254(b), (c); *see, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in her federal habeas

petition to *the Superior Court either on direct or PCRA appeal. See, e.g., Lambert v. Blackwell*,

387 F.3d 210, 233-34 (3d Cir. 2004).[11]

The Supreme Court has explained:

> State prisoners…often fail to raise their federal claims in compliance with state procedures, or even raise those claims in state court at all. If a state court would dismiss these claims for their procedural failures, such claims are technically exhausted because, in the habeas context, "state-court remedies are. . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability." *Woodford v. Ngo*, 548 U.S. 81, 92-93, 126 S. Ct. 2378, 165 L. Ed.2d 368 (2006). But to allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule. *See Coleman*, 501 U.S. at 732, 111 S. Ct. 2546. Thus, federal habeas courts must apply "an important 'corollary' to the exhaustion requirement": the doctrine of procedural default. [*Davila v. Davis*, 582 U.S. 521, 527, 127 S. Ct. 2058, 2064 (2017)]. Under that doctrine, federal courts generally decline to hear any federal claim that was not presented to the state courts "consistent with [the State's] own procedural rules." *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed.2d 518 (2000).
>
> Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights," *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S. Ct. 18, 70 L. Ed.2d 1 (1981) (per curiam), and procedural default protects against "the significant harm to the States that results from the failure of federal courts to respect" state procedural rules, *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546. Ultimately, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without [giving] an opportunity to the state courts to correct a constitutional violation," *Darr v. Burford*, 339 U.S. 200, 204, 70 S. Ct. 587, 94 L .Ed. 761 (1950), and to do so consistent with their own procedures, *see Edwards*, 529 U.S. at 452-453, 120 S. Ct. 1587.

*Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022).

---

[11]  In 2000, the Pennsylvania Supreme Court issued *In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases*, No. 218 Judicial Administration Docket No. 1 ("Order 218"). It provides that state prisoners on direct appeal of a criminal case or in a PCRA proceeding need not petition for allowance of review with the Pennsylvania Supreme Court after the Superior Court denies a claim in order to exhaust a claim for the purposes of subsequent federal habeas review. In *Lambert*, the Court of Appeals held that Order 218 was sufficient to render discretionary review before the Pennsylvania Supreme Court "unavailable" to state prisoners on direct appeal and in a PCRA appeal. Therefore, Pennsylvania state prisoners challenging their judgments of sentence in a federal habeas case need only show that they presented their federal habeas claims to the Superior Court. *Lambert*, 387 F.3d at 231-34.

Thus, the doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism." *Coleman*, 501 U.S. at 730. For a Pennsylvania prisoner in a non-capital case, it provides that an individual defaults a federal habeas claim if she: (1) failed to present it to the Superior Court and cannot do so now because the state courts would decline to address the claim on the merits as state procedural rules (such as, for example, the state's waiver rules or the PCRA's one-year statute of limitations) bar such consideration; or (2) failed to comply with a state procedural rule when she presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

The first scenario is what has occurred here. As Respondents correctly point out, Mack did not properly exhaust Claims 1(b), (c) and (d) and Claim 2 because she did not raise them on appeal to the Superior Court. Because Mack cannot return to state court and litigate these claims now because they would be barred by state waiver rules and by the PCRA's one-year statute of limitations,[12] she has procedurally defaulted each of these claims.

A petitioner may avoid the default of a claim by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to [her.]" *Id.* at 753 (emphasis in original). It is unclear whether Mack is attempting to invoke this exception to the procedural default doctrine. To the extent that

---

[12] The PCRA has its own one-year statute of limitations, which is codified at 42 Pa.C.S. § 9545(b). Unlike AEDPA's statute of limitations, the PCRA's statute of limitations is jurisdictional. *Commonwealth v. Ali*, 86 A.3d 173, 177 (Pa. 2014).

she is by faulting PCRA counsel for not raising any of the claims at issue either in the amended PCRA petition or in the subsequent appeal to the Superior Court, this argument is not persuasive.

The general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely on PCRA counsel's ineffectiveness to establish the "cause" necessary to overcome the default of a federal habeas claim. *Coleman*, 501 U.S. at 753; *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017). In *Martinez v. Ryan*, 566 U.S. 1 (2012) the Supreme Court announced a narrow exception to this rule. In relevant part, it held that in states like Pennsylvania, where the law requires that claims of ineffective assistance of trial counsel be raised for the first time in a collateral proceeding,[13] a petitioner may overcome the default of a *claim of trial counsel's ineffectiveness* if the petitioner demonstrates: (1) the defaulted claim of trial counsel's ineffectiveness is "substantial" and (2) PCRA counsel was ineffective under *Strickland* for (3) failing to raise that claim in the "initial review collateral proceeding" (meaning *to Court of Common Pleas in the PCRA proceeding*). *Martinez*, 566 U.S. at 17.

The holding in *Martinez* is limited to defaulted claims asserting that *trial counsel was ineffective*. *See, e.g.*, *Davila*, 137 S. Ct. at 2062-70. *Martinez* does not apply to any other type of defaulted claim. *Id.* Thus, is to does not apply to Claim 2, in which Mack challenges the validity of her plea to the charge of conspiracy to commit rape because "doing nothing" is not a crime, since that is not a claim asserting that Attorney Spegar was ineffective.

*Martinez* also does not apply to Claims 1(b) and (c) (alleging that Attorney Spegar was ineffective for misinforming Mack that pleading "no contest" to Count 9 meant a judge would

---

[13] In Pennsylvania, a defendant typically may not litigate ineffective assistance of trial counsel claims on direct appeal. Such claims must be raised in a PCRA proceeding. *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002) (abrogated in part on other grounds by *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021)).

decide whether she was guilty and for not provide to Mack her discovery packet, " respectively).
As explained above, these claims were raised in Mack's counseled PCRA petition. (ECF 17-2 at
pp. 6-8.) Thus, they were litigated during the "initial-review collateral proceeding." PCRA
counsel's decision not to pursue them in Mack's subsequent appeal to the Superior Court cannot
establish "cause" to avoid their default. *Martinez*, 566 U.S. at 16; *Norris v. Brooks*, 794 F.3d 401,
404-05 (3d Cir. 2015) (*Martinez* "applies only to attorney error causing procedural default during
initial-review collateral proceedings, not collateral appeals"). Thus, *Martinez* does not apply to
Claims 1(b) and 1(c) either.[14]

That leaves Claim 1(d), in which Mack faults Attorney Spegar for allegedly "failing to
investigate if [the] victim's head injury affected her testimony about the incident." (ECF 5 a p. 11.)
Mack has not shown that this claim of ineffective assistance is "substantial." The Court of Appeals
has explained that a claim that trial counsel was ineffective is "substantial" if it has "some merit."
*Workman v. Supt Albion SCI*, 915 F.3d 928, 938 (3d Cir. 2019). The evaluation is the same one
that a federal court undertakes when it considers whether to grant a certificate of appealability. *Id.*;
*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Thus, a petitioner "must 'show that reasonable jurists
could debate whether (or, for that matter, agree that) the petition should be resolved in a different
manner or that the issues presented were adequate to deserve encouragement to proceed further.'"
*Id.* (quoting *Martinez*, 566 U.S. at 14, which cited *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

---

[14] If *Martinez* did apply to these claims, the Court would hold that they, like Claim 1(d), is not
"substantial."

Mack, who devoted little discussion to Claim 1(d) in the Petition and Reply, has not met that standard here. Nor can she on the closed state court record.[15][16]

Finally, a petitioner may also avoid the default of a claim by demonstrating that the federal habeas court's failure to consider it will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. This type of "gateway" actual innocence claim requires evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995); *see, e.g.*, *Reeves v. Fayette, SCI*, 897 F.3d 154, 157 (3d Cir. 2018). Where, as is the case here, the petitioner did not go to trial and instead entered pleas, she also must establish her actual innocence not only of the counts to which she entered her pleas, but also the

---

[15] As explained above, the Supreme Court reiterated in *Shinn* that "state postconviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner." 142 S. Ct. at 1734. Thus, if a petitioner faults state post-conviction counsel for failing to develop evidence to support a defaulted habeas claim, the federal habeas court is prohibited from holding an evidentiary hearing or otherwise expanding the state court record to introduce evidence to support that claim unless the petitioner has satisfied one of § 2254(e)(2)'s two narrow exceptions to AEDPA's general bar on evidentiary hearings. *Id.* at 1735. *See also Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 724 (3d Cir. 2022) (AEDPA's prohibition is not limited to formal evidentiary hearings and applies whenever the petitioner wants to expand the record beyond that developed in state court) (citing *Shinn*, 142 S. Ct. at 1738 and *Holland v. Jackson*, 542 U.S. 649, 653 (2004)). Mack has not satisfied either of the two limited scenarios set forth in § 2254(e)(2) necessary to permit the Court to conduct a hearing on the merits of Claim 1(d), or any of her defaulted claims for that matter. *See also Rush v. Att'y Gen. of Pennsylvania*, 2023 WL 5756507, at *18 (W.D. Pa. Aug. 15, 2023), report and recommendation adopted, 2023 WL 5759277 (W.D. Pa. Sept. 6, 2023).

[16] In light of *Shinn*, the Court of Appeals in *Williams* has instructed that now, before holding a hearing on whether a petitioner can overcome a default of a claim, a federal habeas court must first decide whether the underlying defaulted habeas claim "succeeds considering only the state court record." 45 F.4th at 724 (emphasis added). If the court concludes that the underlying claim is not supported by the state court record, it "should deny relief without more." *Id.* That is, if the state court record alone does not allow the petitioner to succeed on the habeas claim, the court must skip a hearing on whether the petitioner can overcome the default "altogether and deny habeas relief" on the underlying habeas claim. *Id.* at 723-24; *see also id.* at 720 (explaining that the court "need not dwell" on the issue of whether the petitioner can overcome his default if the petitioner cannot show that his trial counsel was ineffective when considering only the facts developed in state court.)

other charges the government excused in the plea-bargaining process (which in this case was the rape charge at Count 5, which the prosecution nolle prossed). *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). Moreover, and importantly, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012) (quoting *Bousley*, 523 U.S. at 623).

Mack seems to be asserting that she is "actually innocent" of the crime of conspiracy to commit rape (Count 9) because her co-defendant, Colbert, "was not charged with rape. Therefore, who did [she] conspire with?" (ECF 5 at p. 8.) Mack's assertion that Colbert was not charged with rape is inaccurate, however. Respondents have submitted the state court decisions issued in Colbert's own PCRA proceeding that show that the Commonwealth charged him with crimes similar to what it charged Mack, including the crime of rape by forcible compulsion. (ECF 17-4 at pp. 8-10.) Colbert eventually pleaded guilty to attempted homicide, aggravated assault, kidnapping, robbery, criminal conspiracy, sexual assault, unlawful restraint, theft by unlawful taking and simple assault and the trial court sentenced him to a term of incarceration of 27 ½ to 55 years. (*Id.* at pp. 8-9.)

At Colbert's plea hearing, the prosecution nolle prossed charges of rape by forcible compulsion and two criminal conspiracy charges. (*Id.* at p. 9.) That the prosecution did so, however, does not establish that Mack's case is one in which the petitioner may be *factually innocent* such that it would be fundamentally unfair for the federal habeas court not to review the merits of a defaulted claim. Simply put, Mack has not established her factual innocence and the miscarriage of justice rule is not implicated here.

Thus, Claim 1(b), Claim 1(c), Claim 1(d) and Claim 2 are procedurally defaulted and there are no grounds to excuse Mack's default of them. For this reason, the Court will deny each of these claims.[17]

## IV.   Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when

---

[17] The Court also notes that it is at least debatable whether Claim 2 states a cognizable claim for relief under § 2254. In Claim 2, Mack is essentially asserting that she is innocent of the crime of conspiracy to commit rape (Count 9), to which she pleaded no contest. (ECF 5 at p. 8 "doing nothing" [is not] a crime…. There was no evidence [she] assaulted the victim.") In the Third Circuit, "[i]t has long been recognized that '[c]laims of actual innocence based on only newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *Albrecht v. Horn*, 485 F.3d 103, 121-22 (3d Cir. 2007). However, the Court of Appeals has acknowledged that the Supreme Court has yet to definitively resolve the issue. *Reeves*, 897 F.3d at 160 n.4. The Court of Appeals has further explained that to the extent freestanding actual innocence claims are cognizable, they must be "assessed under a more demanding standard [than a gateway actual innocence claim], since the petitioner's [freestanding] claim is that his conviction is constitutionally impermissible 'even if his conviction was the product of a fair trial[.]'" *Id.* (quoting *Schlup*, 513 U.S. at 316 and citing *House v. Bell*, 547 U.S. 518, 555 (2006)). If indeed a freestanding claim of actual innocence could be brought in a non-capital federal habeas case such as this one, Mack has fallen short of offering the type of evidence of innocence that would entitle her to habeas relief on such a claim given that she has not satisfied the lesser (although still demanding) standard that applies to gateway actual innocence claims.

the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Applying those standards here, jurists of reason would not find it debatable whether Mack's claims should be denied for the reasons given herein. Accordingly, the Court will not issue a certificate of appealability on any of Mack's grounds for relief.

**V.     Conclusion**

Based on the above, the Court will deny the Petition and will deny a certificate of appealability with respect to each claim.

An appropriate Order follows.


Date:  April 4, 2024                              /s/ Patricia L. Dodge
                                                  PATRICIA L. DODGE
                                                  United States Magistrate Judge

28